```
FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

    NOV 2 8 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | SA CR No. 12-  **SA CR12-0269** |
|           Plaintiff, ) | <u>I N D I C T M E N T</u> |
|           v. ) | [15 U.S.C. §§ 78j(b), 78ff; |
| DOUGLAS V. DECINCES, ) | 17 C.F.R. § 240.10b-5: |
| DAVID PARKER, ) | Securities Fraud (Insider |
| F. SCOTT JACKSON, and ) | Trading); 15 U.S.C. §§ 78n(e), |
| ROGER WITTENBACH, ) | 78ff; 17 C.F.R. § 240.14e-3(a): |
| ) | Tender Offer Fraud; 18 U.S.C. |
|           Defendants. ) | § 1957: Transactional Money |
| ) | Laundering; 18 U.S.C. § 2(b): |
| ) | Causing an Act to be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH THIRTEEN

[15 U.S.C. § 78j(b), 78ff; 17 C.F.R. § 240.10b-5;
18 U.S.C. § 2(b)]

[Defendant DECINCES]

A.    <u>Abbott's Acquisition of EYE</u>

    1.    At all times relevant to this Indictment, Advanced Medical Optics, Inc. ("EYE") was a medical device company based in Santa Ana, California.  Shares of EYE common stock were

publicly traded on the New York Stock Exchange ("NYSE"), a national securities exchange, under the symbol "EYE."

2.   In 2009, Abbott Laboratories ("Abbott") acquired EYE through a tender offer.  The tender offer was publically announced on January 12, 2009.

B.   <u>The Source's Access To Inside Information Regarding Abbott's Acquisition of EYE</u>

3.   The Source ("Source") was an officer and director of EYE.  Through his position at EYE, the Source learned of material, nonpublic information regarding Abbott's acquisition of EYE (the "Inside Information"), prior to any such information being released to the investing public or reported to the Securities and Exchange Commission ("SEC").  In particular:

a.   On or about October 22, 2008, the Source obtained Inside Information at a dinner with Abbott's Chief Executive Officer ("CEO") in Costa Mesa, California.

b.   On or about October 26, 2008, the Source obtained Inside Information at a meeting with Abbott personnel in Newport Beach, California.

c.   On or about November 14, 2008, the Source obtained Inside Information at a meeting with Abbott's CEO in Costa Mesa, California.

d.   On or about November 26, 2008, the Source obtained Inside Information when he was contacted by an Abbott representative who informed the Source that Abbott would be submitting a preliminary tender offer proposal to acquire EYE in the next few days.

   e. On or about December 1, 2008, the Source obtained Inside Information when he received Abbott's non-binding preliminary proposal offering to buy EYE's outstanding shares of common stock through a tender offer for the cash price range of $21-$23 per share.

   f. On or about December 2, 2008, the Source obtained Inside Information when he attended a telephonic meeting of the EYE Board of Directors at which the EYE Board of Directors agreed to engage in a limited period of exclusive negotiations with Abbott to purchase EYE.

   g. On or about December 15 and 16, 2008, the Source obtained Inside Information when he attended meetings with EYE's legal and financial advisors in Newport Beach, California.

   h. On or about December 16, 2008, the Source obtained Inside Information when he met with an Abbott Senior Vice President in Costa Mesa, California, from approximately 6:00 p.m. to 9:00 p.m.

   i. On or about December 21, 2008, the Source obtained Inside Information when he received a call from an Abbott representative who confirmed that, after completion of Abbott's preliminary legal and financial due diligence review of EYE, Abbott's proposed purchase price for EYE common stock remained in the range of $21 to $23 per share.

   j. On or about December 28, 2008, the Source obtained Inside Information when he received a call from Abbott confirming that Abbott would be willing to propose a binding purchase price of $21 per share of EYE common stock.

k.    On or about December 31, 2008, the Source obtained Inside Information when he and an Abbott Senior Vice President had a 35-minute telephone conversation.

l.    On or about January 3, 2009, the Source obtained Inside Information when he and an Abbott Senior Vice President had an 84-minute telephone call that ended at 4:30 p.m.

m.    On or about January 4, 2009, the Source obtained Inside Information when he attended a meeting of the EYE Board of Directors from approximately noon to 2:00 p.m.

4.    As an officer and director of EYE, the Source owed a fiduciary duty of trust and confidence to EYE, and to the shareholders of EYE, not to use the Inside Information for personal benefit.  As an officer and director of EYE, the Source was also subject to EYE's policies regarding the use and safekeeping of confidential information, which also prohibited the Source from using the Inside Information for personal benefit.  As an officer and director of EYE involved in negotiations with Abbott regarding its acquisition of EYE, the Source executed a confidentiality agreement that required him to maintain the confidentiality of the Inside Information the Source received, not trade based upon on the Inside Information or use it for personal benefit, and not disclose the Inside Information to any third parties.

C.    Defendant DECINCES' Receipt From the Source of Inside Information Regarding Abbott's Acquisition of EYE

5.    Defendant DOUGLAS V. DECINCES ("DECINCES") was a close personal friend of the Source.  In particular, defendant DECINCES and the Source were neighbors, were members of the same golf

4

club, and vacationed together.  In addition, the Source arranged for EYE to co-sponsor an annual charity golf tournament with defendant DECINCES, had defendant DECINCES help him purchase a home, invested in a business operated by defendant DECINCES' son, and retained defendant DECINCES' daughter to provide decorating services.

6.    On or about some or all of the following dates, defendant DECINCES and the Source had the following personal contacts, during some or all of which the Source, in advance of the public announcement of Abbott's tender offer for EYE, in violation of his fiduciary duties of trust and confidence to EYE and EYE's shareholders, and for personal benefit, provided Inside Information to defendant DECINCES:

a.    On or about November 2, 2008, defendant DECINCES and the Source placed telephone calls to each other.

b.    On or about November 24, 2008, defendant DECINCES and the Source attended an Anaheim Ducks hockey game together in Anaheim, California.

c.    On or about November 30, 2008, defendant DECINCES and the Source placed telephone calls to each other.

d.    On or about December 6, 2008, defendant DECINCES and the Source attended and were seated at the same table at the Annual Hoag Hospital Benefit Dinner at the Ritz Carlton in Laguna Niguel, California.

e.    On or about December 16, 2008 at approximately 9:12 p.m., the Source called defendant DECINCES' cellular phone and left a two-minute voice mail message.

f.    On or about December 31, 2008, defendant DECINCES and the Source played golf at the country club at which both were members in Newport Beach, California.

g.    On or about January 1, 2009, defendant DECINCES and the Source placed telephone calls to each other.

h.    On or about January 3, 2009, at approximately 4:37 p.m., the Source called defendant DECINCES.

i.    On or about January 4, 2009 at approximately 7:20 p.m., defendant DECINCES and the Source had dinner together at the country club at which both were members in Newport Beach, California.

D.    Defendant DECINCES' Purchases Of EYE Stock Based on Inside Information Received From the Source

7.    On or about November 5, 2008, November 26, 2008, December 1, 2008, and December 2, 2008, in advance of the public announcement of Abbott's acquisition of EYE, knowing that the Source's provision to defendant DECINCES of Inside Information violated the Source's fiduciary duties of trust and confidence to EYE and EYE's shareholders, and based on the Inside Information he had received from the Source, defendant DECINCES, through his Merrill Lynch broker, purchased a total of 15,000 shares of EYE common stock.

8.    On or about December 8, 2008, defendant DECINCES provided his physical therapist with Inside Information defendant DECINCES had received from the Source, namely, that EYE was likely to be acquired by another company and that EYE's stock price would increase to approximately $20 by the end of the year,

1 and, based on this Inside Information, defendant DECINCES advised
2 his physical therapist to buy EYE stock.

3   9.   On or about December 8, 2008, after his physical
4 therapy appointment, defendant DECINCES called his Merrill Lynch
5 broker three times and left messages that defendant DECINCES
6 needed to speak to the broker that day.  Defendant DECINCES
7 finally spoke to his Merrill Lynch broker after the market closed
8 for approximately 15 minutes.

9   10.  Between on or about December 9, 2008, and on or about
10 December 12, 2008, defendant DECINCES liquidated his diverse
11 stock portfolio at Merrill Lynch at a loss of approximately
12 $80,000 in order to net approximately $160,000 that defendant
13 DECINCES then used to fund additional purchases of EYE common
14 stock based on Inside Information provided by the Source.

15   11.  On or about December 12, 2008, December 15, 2008,
16 December 17, 2008, December 18, 2008, January 2, 2009, and
17 January 5, 2009, in advance of the public announcement of
18 Abbott's acquisition of EYE, knowing that the Source's provision
19 to defendant DECINCES of Inside Information violated the Source's
20 fiduciary duties of trust and confidence to EYE and EYE's
21 shareholders, and based on the Inside Information he had received
22 from the Source, defendant DECINCES, through his Merrill Lynch
23 broker, his PMB broker, a personal brokerage account at Credit
24 Suisse, and four brokerage accounts set up for his grandchildren
25 at Credit Suisse, purchased a total of 75,700 shares of EYE
26 common stock.

27   12.  On or about January 5, 2009, to further encourage his
28 physical therapist to buy EYE stock, defendant DECINCES provided

his physical therapist with Inside Information defendant DECINCES had received from the Source, namely, that the acquisition of EYE would occur in approximately one week.

13. On or about January 12, 2009, after the public announcement of Abbott's acquisition of EYE, which resulted in EYE's stock price increasing approximately 143 percent, defendant DECINCES sold all his shares of EYE common stock, including those purchased in the brokerage accounts set up for his grandchildren at Credit Suisse, for a profit of approximately $1.3 million.

E.   Defendant DECINCES' Securities Fraud Violations

14. On or about the dates set forth below, in the Central District of California and elsewhere, defendant DECINCES knowingly, unlawfully, and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon the purchasers and sellers of EYE common stock and the investing public, namely, defendant DECINCES, while in possession of material information relating to EYE common stock, which

information defendant DECINCES knew was nonpublic and had been obtained and provided to him by the Source in violation of a duty of trust and confidence owed by the Source to EYE and EYE's shareholders, made and caused to be made the following purchases of EYE common stock, without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, as specified in each count below:

| COUNT | DATE | SECURITIES TRANSACTION |
|-------|------|------------------------|
| ONE | 11/5/2008 | Purchase of 3,500 shares of EYE common stock |
| TWO | 11/26/2008 | Purchase of 3,500 shares of EYE common stock |
| THREE | 12/1/2008 | Purchase of 3,000 shares of EYE common stock |
| FOUR | 12/2/2008 | Purchase of 5,000 shares of EYE common stock |
| FIVE | 12/12/2008 | Purchase of 4,000 shares of EYE common stock |
| SIX | 12/15/2008 | Purchase of 14,000 shares of EYE common stock |
| SEVEN | 12/17/2008 | Purchase of 8,000 shares of EYE common stock |
| EIGHT | 12/17/2008 | Purchase of 10,000 shares of EYE common stock |
| NINE | 12/18/2008 | Purchase of 3,000 shares of EYE common stock |
| TEN | 1/2/2009 | Purchase of 1,200 shares of EYE common stock |
| ELEVEN | 1/2/2009 | Purchase of 12,500 shares of EYE common stock |
| TWELVE | 1/5/2009 | Purchase of 8,000 shares of EYE common stock |

| THIRTEEN | 1/5/2009 | Purchase of 15,000 shares of EYE common stock |
|----------|----------|-----------------------------------------------|

## COUNTS FOURTEEN THROUGH TWENTY-SIX

[15 U.S.C. §§ 78n(e) and 78ff; 17 C.F.R. § 240.14e-3(a);
18 U.S.C. § 2(b)]

[Defendant DECINCES]

15.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 13 of this Indictment as though fully set forth herein.

16.   On or about the dates set forth below, in the Central District of California, and elsewhere, defendant DECINCES knowingly, unlawfully, and willfully engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, namely, after Abbott had taken substantial steps to commence a tender offer for EYE common stock, defendant DECINCES, while in possession of material information relating to such tender offer, which information defendant DECINCES knew was nonpublic and had been acquired directly and indirectly from the offering person, and from an officer, director, and employee and other person acting on behalf of the offering person, made and caused to be made the following purchases of EYE common stock without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, as specified in each count below:

//

//

| COUNT | DATE | SECURITIES TRANSACTION |
|---|---|---|
| FOURTEEN | 11/5/2008 | Purchase of 3,500 shares of EYE common stock |
| FIFTEEN | 11/26/2008 | Purchase of 3,500 shares of EYE common stock |
| SIXTEEN | 12/1/2008 | Purchase of 3,000 shares of EYE common stock |
| SEVENTEEN | 12/2/2008 | Purchase of 5,000 shares of EYE common stock |
| EIGHTEEN | 12/12/2008 | Purchase of 4,000 shares of EYE common stock |
| NINETEEN | 12/15/2008 | Purchase of 14,000 shares of EYE common stock |
| TWENTY | 12/17/2008 | Purchase of 8,000 shares of EYE common stock |
| TWENTY-ONE | 12/17/2008 | Purchase of 10,000 shares of EYE common stock |
| TWENTY-TWO | 12/18/2008 | Purchase of 3,000 shares of EYE common stock |
| TWENTY-THREE | 1/2/2009 | Purchase of 1,200 shares of EYE common stock |
| TWENTY-FOUR | 1/2/2009 | Purchase of 12,500 shares of EYE common stock |
| TWENTY-FIVE | 1/5/2009 | Purchase of 8,000 shares of EYE common stock |
| TWENTY-SIX | 1/5/2009 | Purchase of 15,000 shares of EYE common stock |

COUNTS TWENTY-SEVEN THROUGH THIRTY-FOUR

[15 U.S.C. § 78j(b), 78ff; 17 C.F.R. § 240.10b-5;
18 U.S.C. § 2(b)]

[Defendants DECINCES, PARKER, WITTENBACH, and JACKSON]

17.  The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 13 of this Indictment as though fully set forth herein.

A.  Defendants PARKER, WITTENBACH, and JACKSON, and Their Relationship to Defendant DECINCES

18.  Defendant DAVID PARKER ("PARKER") was a friend and business partner of defendant DECINCES.  Defendant PARKER knew that defendant DECINCES and the Source were friends.

19.  Defendants F. SCOTT JACKSON and ROGER WITTENBACH were friends of defendant DECINCES and were aware that defendant DECINCES knew the Source.

20.  Defendant DECINCES had previously provided defendants PARKER, WITTENBACH, and JACKSON with recommendations for investments that had gone bad.  Due to their friendship and to make up for these prior bad investment recommendations, defendant DECINCES provided defendants PARKER, WITTENBACH, and JACKSON with Inside Information defendant DECINCES had received from the Source.

B.  Defendant PARKER's Purchases of EYE Stock Based on Inside Information

21.  On or about January 5, 2009, in a telephone call, defendant DECINCES communicated to defendant PARKER Inside Information that defendant DECINCES had received from the Source.

22.  On or about January 6, 2009, in advance of the public announcement of Abbott's acquisition of EYE, knowing that the

13

Inside Information he had received from defendant DECINCES had been provided to defendant DECINCES by the Source, knowing that the Source's provision to defendant DECINCES of Inside Information violated the Source's fiduciary duties of trust and confidence to EYE and EYE's shareholders, and based on the Inside Information provided by defendant DECINCES, defendant PARKER, purchased a total of 15,000 shares of EYE common stock.

23.   On or about January 8, 2009, in advance of the public announcement of Abbott's acquisition of EYE, knowing that the Inside Information he had received from defendant DECINCES had been provided to defendant DECINCES by the Source, knowing that the Source's provision to defendant DECINCES of Inside Information violated the Source's fiduciary duties of trust and confidence to EYE and EYE's shareholders, and based on the Inside Information provided by defendant DECINCES, defendant PARKER wired $100,000 into the brokerage account through which he had recently purchased EYE stock and used that money to purchase an additional 10,000 shares of EYE common stock.

24.   On or about January 12, 2009, after the public announcement of Abbott's acquisition of EYE, defendant PARKER sold all his shares of EYE common stock for a profit of approximately $347,920.

C.   <u>Defendant WITTENBACH's Purchases of EYE Stock Based on Inside Information</u>

25.   On or about January 7, 2009, in a telephone call, defendant DECINCES communicated to defendant WITTENBACH Inside Information that defendant DECINCES had received from the Source.

26.   On or about January 8, 2009, in advance of the public announcement of Abbott's acquisition of EYE, knowing that the Inside Information he had received from defendant DECINCES had been provided to defendant DECINCES by the Source, knowing that the Source's provision to defendant DECINCES of Inside Information violated the Source's fiduciary duties of trust and confidence to EYE and EYE's shareholders, and based on the Inside Information provided by defendant DECINCES, defendant WITTENBACH purchased 15,000 shares of EYE common stock and caused his sister to purchase 1,000 shares of EYE common stock.

27.   On or about January 12, 2009, after the public announcement of Abbott's acquisition of EYE, defendant WITTENBACH sold all his shares of EYE for a profit of approximately $201,692.   That same day, defendant WITTENBACH's sister sold her EYE shares for a profit of approximately $13,214.

D.   Defendant JACKSON's Purchases of EYE Stock Based on Inside Information

28.   On or about January 8, 2009, during a breakfast meeting in Costa Mesa, California, defendant DECINCES communicated to defendant JACKSON Inside Information that defendant DECINCES had received from the Source.

29.   On or about January 8, 2009, during the breakfast meeting with defendant DECINCES, in advance of the public announcement of Abbott's acquisition of EYE, knowing that the Inside Information he had received from defendant DECINCES had been provided to defendant DECINCES by the Source, knowing that the Source's provision to defendant DECINCES of Inside Information violated the Source's fiduciary duties of trust and

15

confidence to EYE and EYE's shareholders, and based on the Inside Information provided by defendant DECINCES, defendant JACKSON used his hand-held mobile device to buy 8,500 shares of EYE common stock.  Later that day, defendant JACKSON bought an additional 1,700 shares of EYE common stock.  On or about January 9, 2009, defendant JACKSON bought an additional 800 shares of EYE common stock based on Inside Information communicated to him by defendant DECINCES.

30.  On or about January 12, 2009, after there was a public announcement of Abbott's acquisition of EYE, defendant JACKSON sold all his shares of EYE for a profit of approximately $140,259.

E.  <u>Securities Fraud Violations</u>

31.  On or about the dates set forth below, in the Central District of California and elsewhere, the following defendants, aiding and abetting each other, knowingly, unlawfully, and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a

fraud and deceit upon the purchasers and sellers of EYE common

stock and the investing public, namely, while in possession of

material information relating to EYE common stock, which

information the defendants knew was nonpublic and had been

obtained and provided by the Source in violation of a duty of

trust and confidence owed by the Source to EYE and EYE's

shareholders, made and caused to be made the following purchases

of EYE common stock, without first publicly disclosing such

information and its source, and without such information and its

source having been publicly disclosed by press release and

otherwise within a reasonable time prior to such purchase and

sale, as specified in each count below:

| COUNT | DATE | DEFENDANTS | SECURITIES TRANSACTION |
|-------|------|------------|------------------------|
| TWENTY-SEVEN | 1/6/2009 | DECINCES, PARKER | Purchase of 6,000 shares of EYE common stock |
| TWENTY-EIGHT | 1/6/2009 | DECINCES, PARKER | Purchase of 9,000 shares of EYE common stock |
| TWENTY-NINE | 1/8/2009 | DECINCES, PARKER | Purchase of 10,000 shares of EYE common stock |
| THIRTY | 1/8/2009 | DECINCES, WITTENBACH | Purchase of 15,000 shares of EYE common stock |
| THIRTY-ONE | 1/8/2009 | DECINCES, WITTENBACH | Purchase of 1,000 shares of EYE common stock |
| THIRTY-TWO | 1/8/2009 | DECINCES, JACKSON | Purchase of 8,500 shares of EYE common stock |
| THIRTY-THREE | 1/8/2009 | DECINCES, JACKSON | Purchase of 1,700 shares of EYE common stock |
| THIRTY-FOUR | 1/9/2009 | DECINCES, JACKSON | Purchase of 800 shares of EYE common stock |

COUNTS THIRTY-FIVE THROUGH FORTY-TWO

[15 U.S.C. §§ 78n(e) and 78ff; 17 C.F.R. § 240.14e-3(a);
18 U.S.C. § 2(b)]

[Defendants DECINCES, PARKER, WITTENBACH, and JACKSON]

32.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 13 and 18 through 30 of this Indictment as though fully set forth herein.

33.   On or about the dates set forth below, in the Central District of California, and elsewhere, the following defendants knowingly, unlawfully, and willfully engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, namely, after Abbott had taken substantial steps to commence a tender offer for EYE common stock, while in possession of material information relating to such tender offer, which information the defendants knew was nonpublic and had been acquired directly and indirectly from the offering person, and from an officer, director, and employee and other person acting on behalf of the offering person, made and caused to be made the following purchases of EYE common stock without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, as specified in each count below:

//

//

| COUNT | DATE | DEFENDANTS | SECURITIES TRANSACTION |
|---|---|---|---|
| THIRTY-FIVE | 1/6/2009 | DECINCES, PARKER | Purchase of 6,000 shares of EYE common stock |
| THIRTY-SIX | 1/6/2009 | DECINCES, PARKER | Purchase of 9,000 shares of EYE common stock |
| THIRTY-SEVEN | 1/8/2009 | DECINCES, PARKER | Purchase of 10,000 shares of EYE common stock |
| THIRTY-EIGHT | 1/8/2009 | DECINCES, WITTENBACH | Purchase of 15,000 shares of EYE common stock |
| THIRTY-NINE | 1/8/2009 | DECINCES, WITTENBACH | Purchase of 1,000 shares of EYE common stock |
| FORTY | 1/8/2009 | DECINCES, JACKSON | Purchase of 8,500 shares of EYE common stock |
| FORTY-ONE | 1/8/2009 | DECINCES, JACKSON | Purchase of 1,700 shares of EYE common stock |
| FORTY-TWO | 1/9/2009 | DECINCES, JACKSON | Purchase of 800 shares of EYE common stock |

COUNT FORTY-THREE

[18 U.S.C. § 1957]

[Defendant PARKER]

34.    The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 13 and 18 through 30 of this Indictment as though fully set forth herein.

35.    On or about January 21, 2009, in the Central District of California, and elsewhere, defendant PARKER knowingly engaged in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, by writing a Merrill Lynch check (No. 269) in the amount of $212,500 from a Merrill Lynch brokerage account (XXXX2150) payable to Yodigity Ventures, LLC, such property having been derived from a specified unlawful activity, namely, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 77ff, and Title 17, Code of Federal Regulations, Section 240.14e-3(a).

COUNT FORTY-FOUR

[18 U.S.C. § 1957]

[Defendant DECINCES]

36.  The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 13 and 18 through 30 of this Indictment as though fully set forth herein.

37.  On or about January 26, 2009, in the Central District of California, and elsewhere, defendant DECINCES knowingly engaged in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, by initiating a wire transfer from a PMB brokerage account (XX7014) in the amount of $25,000 into Vision Motor Corporation, such property having been derived from a specified unlawful activity, namely, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 77ff, and Title 17, Code of Federal Regulations, Section 240.14e-3(a).

A TRUE BILL

_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

JENNIFER L. WAIER & IVY A. WANG
Assistant United States Attorneys
Santa Ana Branch Office