RICHARD MARMARO (Bar No. 091387)
richard.marmaro@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Fax: (213) 687-5600

CLIFFORD M. SLOAN (pro hac vice)
cliff.sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Attorneys for Defendant James V. Mazzo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAMES V. MAZZO, DOUGLAS V. DECINCES, AND DAVID L. PARKER,

Defendants.

CASE NO. 8:12-cr-00269(B)-AG

**REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL**

Hon. Andrew J. Guilford
Courtroom: 10D
Trial Date: March 7, 2017

Defendant James V. Mazzo, by and through his attorneys, hereby submits a Reply to the Government's Response to Objections of Defendant Mazzo to Government's Notice of Intent to Introduce Statements of Defendant Parker at Trial.

DATED: March 20, 2017

Respectfully submitted,
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Richard Marmaro
Clifford M. Sloan

By: /s/Richard Marmaro
Richard Marmaro

*Attorneys for James V. Mazzo*

i

REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL
No. 8:12-CR-00269(B)-AG

## 1.0 Introduction

James V. Mazzo has objected to the use of David L. Parker's out-of-court statements (in SEC testimony and an email to his Bishop) against him in this case, and to the misleading redactions in those statements proposed by the government. (See Dkt. 490.)

The government's response (Dkt. 512) establishes that the government and Mr. Mazzo **agree** on a few key points, which may help to clarify the issues for the Court's consideration. **First**, Mr. Mazzo and the government agree that, in order to invoke the co-conspirator exemption from the hearsay rule, the government must prove: "(1) that the declaration be in furtherance of the conspiracy; (2) that the declaration be made during the course of the conspiracy; and (3) that there is **independent proof** of the existence of the conspiracy and of the connection of the declarant and the defendant with it." United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981) (emphasis added). **Second**, the government must prove these elements by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 176 (1987). **Third**, pursuant to the Rule of Completeness and other principles, the government may not offer redacted documents "where the meaning of a statement is distorted by its edited presentation, creating a misleading impression." (Dkt. 512 at 13-14.) Mr. Mazzo respectfully submits that these principles alone are sufficient to resolve the issues with the proposed excerpts from Mr. Parker's statements.

## 2.0 Argument

### 2.1 The Co-Conspirator Exemption Does Not Apply

**A limiting instruction** regarding Mr. Parker's hearsay statements **is essential** and warranted. Mr. Mazzo does not contest that Mr. Parker's out-of-court statements

may be offered as evidence against **Mr. Parker** under the exemption for party admissions (Rule 801(d)(2)(A)), subject to the Rule of Completeness (Rule 106). Both parties agree that the sole question, aside from the Rule of Completeness, is whether Mr. Mazzo is entitled to a limiting instruction prohibiting the use of Mr. Parker's statements against him. Such an instruction is appropriate and necessary.

First, **neither the email nor the SEC testimony was produced "during" or "in furtherance of" an alleged conspiracy**. The government has explicitly represented to this Court that "[t]he conduct on which these charges are based ended in January 2009." (Opp'n to Def. James V. Mazzo's Mot. to Dismiss the SSI as Time Barred, Dkt. 237 at 1.) Both the SEC testimony and the email at issue occurred **after** the alleged scheme ended – on December 18, 2009, and August 18, 2012, respectively. The government now claims that the purported scheme "included the objective to conceal the scheme from law enforcement." (Dkt. 512 at 10.) This allegation of a continuing conspiracy with "concealment" is barred by the government's previous representation to this Court, and, in any event, is based on the government's mere assertion, rather than evidence. **Mr. Mazzo strongly contests the claim that he concealed anything from the government**. Tellingly, moreover, the government's claim is a far cry from the witness-tampering scheme it invokes as an example of a conspiracy to conceal wrongdoing from law enforcement. See Dkt. 512 at 11-12; United States v. Padilla, 203 F.3d 156, 158, 161-62 (2d Cir. 2000).

Second, and most fundamentally, **there is not sufficient evidence – indeed, there is no evidence – to tie Mr. Mazzo to any supposed conspiracy**. The government spends much of its brief discussing the precedential value of cases decided before the Supreme Court's seminal opinion in Bourjaily. The Court need

not resolve that largely academic debate. Mr. Mazzo submits that the co-conspirator issue can be resolved based **solely on principles on which the parties agree**. Both parties agree that United States v. Silverman, 861 F.2d 571 (9th Cir. 1988), remains good law. Applying Federal Rule of Evidence 801(d)(2)(E) and Bourjaily, the Ninth Circuit found that the following testimony and evidence did not sufficiently establish a connection between the defendant and the alleged conspiracy in Silverman:

- A witness bought cocaine from the defendant's sister at an airport;
- The sister said she was calling the defendant (her brother) as the witness hailed a cab for her;
- The sister got into the cab and returned to the airport two to three hours later with cocaine;
- This same sequence of events happened on two other occasions;
- During the third sale, the sister was dropped off by a man who "looked very much like" the defendant;
- The sister told the witness she was getting the cocaine from the defendant (her brother);
- There was evidence that a passenger was driven by the cab company from the airport to the defendant's residence on the date of the third sale; and
- The defendant pretended to be someone else when DEA agents showed up at his home.

Id. at 573-575. The district court ruled that this evidence was sufficient to establish a connection to the cocaine-distribution conspiracy between the sister and the witness. The Ninth Circuit reversed. Id. at 582

Not only did the Ninth Circuit hold in Silverman that "a co-conspirator's statement implicating the defendant in the alleged conspiracy must be corroborated

by **fairly incriminating evidence**," but the Court also held that "[e]vidence of **wholly innocuous conduct** or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, **by a preponderance of the evidence**, that the defendant knew of and participated in the conspiracy." Id. at 578 (emphasis added). The Court reasoned that, even though the defendant's sister visited him during one of her cocaine excursions and even though he dropped her off with the drugs at the airport, this evidence made his connection to the conspiracy "only slightly more probable" than the co-conspirator statements themselves. Id. at 579. The Court noted that it agreed with the government "that the additional evidence is 'slight' if that, but disagree[d] that the evidence supports admission of" the sister's statements. Id. at 580. The Court was no more persuaded by the evidence of defendant's misrepresentations to the DEA.

Here, the evidence allegedly connecting Mr. Mazzo to an insider trading "conspiracy" is far thinner than in Silverman. The "evidence" consists of "wholly innocuous conduct" like attending dinners or hockey games, and phone calls between houses. See Silverman, 861 F.2d at 579 ("We have consistently recognized that evidence that a defendant merely associated with a member of a conspiracy has little probative value in demonstrating the defendant's connection to that conspiracy."). The government also alleges that Mr. Mazzo did not accurately report knowing several of Mr. DeCinces's friends – a contention that Mr. Mazzo **strongly** contests. Even if true, moreover (which it is not), that would not be sufficient to connect Mr. Mazzo to the alleged conspiracy under Silverman. As such, Mr.

4

REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL
No. 8:12-CR-00269(B)-AG

Parker's statements are not admissible against Mr. Mazzo under the co-conspirator exemption.[1]

Mr. Mazzo recognizes that the Court already has emphasized the propriety of a limiting instruction if the government's proof of a conspiracy is lacking: "If, in fact, I find that the government has no evidence of a conspiracy, I will not only give the instruction, but I'll give it with an exclamation point and a heavy emphasis." (Trial Tr. at 8: 14-17, March 10, 2016.)

Mr. Mazzo accordingly requests the following curative instruction: "You have heard testimony that Mr. Parker made certain statements outside of this courtroom in an email to his Bishop and investigative testimony to the Securities and Exchange Commission. I instruct you that this evidence is admitted only for the limited purpose of being considered with respect to Mr. Parker and, therefore, you must consider it only for that limited purpose and not for any other purpose. Let me emphasize that it may not be considered as evidence against Mr. Mazzo." See 9th Cir. Crim. Jury Instr. 2.11 (2010).

---

[1] The government suggests that, in the interlocutory appeal in this case, the Ninth Circuit found as a fact that a conspiracy existed between Mr. Mazzo and others. (Dkt. 512 at 8-9, nn.1 & 2.) That is not accurate or sound. To state the obvious, "the trial court, not the appellate tribunal, should be the finder of the facts." Fed. R. Civ. P. 52, advisory committee's note (1985 Amendment) (emphasis added). The appellate court's pre-trial decision, which relied simply on the government's representations and allegations, did not, by words or implication, preempt this Court's role as the finder of fact. The Court of Appeals, of course, found no facts and held no evidentiary hearing. **It is the province of this Court** to determine whether the facts in this case establish a conspiracy, as well as the scope and duration of such a conspiracy. Fed. R. Evid. 104; Bourjaily, 483 U.S. at 176.

5

REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL
No. 8:12-CR-00269(B)-AG

For the reasons stated, the government has not introduced or pointed to sufficient proof to tie Mr. Mazzo to a conspiracy with Mr. Parker. To the extent the Court has any doubt on this point, Mr. Mazzo respectfully requests that the Court require the government to submit a specific, detailed proffer of the evidence it relies upon. The government has had abundant notice of defendant's position (and the Court's position) on this important issue, and, if it has such evidence, it should be able to identify and produce it promptly.

### 2.2 Mr. Parker's Statements Are Not Admissible Against Mr. Mazzo as False Exculpatory Statements

The government also claims that some of Mr. Parker's assertions are admissible false exculpatory statements. This position likewise falls far short of establishing the admissibility of the statements **against Mr. Mazzo**.

**First**, notwithstanding its reliance on a claim of false exculpatory statements, the government clearly intends to introduce at least some of the statements for the truth of the matter asserted. The government seems to acknowledge this point. (See, e.g., Dkt. 512 at 3 (stating "to the extent that some of Parker's statements in the [SEC] testimony and Bishop Email are being offered for the truth . . . .").) Presumably, for example, the government's position is that Mr. Parker's statements about Mr. DeCinces encouraging him to buy AMO stock (e.g., Dkt. 486, Exh. B, at 1), are true. Thus, the government cannot avoid its burden to establish, by a preponderance of the evidence, the requisite conspiracy to qualify for the co-conspirator exemption from the hearsay rule. Notably, moreover, the government has provided the Court and Mr. Mazzo with no statement-by-statement explication of which statements it offers for the truth of the matter asserted and which it does not.

6

REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL
No. 8:12-CR-00269(B)-AG

Second, regarding the statements claimed by the government to be false exculpatory statements, the government continues to bear a burden of justification for their introduction. The government must show not only that such statements actually are false, see, e.g., United States v. Bland, 237 F. App'x 268, 269 (9th Cir. 2007) (finding district court erred in admitting statements where the government presented only "speculative testimony" falling "well short of demonstrating that [the] statements were false"), but also that the statements are connected **to Mr. Mazzo** in some way. Without such evidence, the statements should not be admitted against Mr. Mazzo under basic principles of Rules 401 and 403 (including unfair prejudice and confusion). Moreover, to the extent that the government is not resting on a conspiracy involving Mr. Mazzo and Mr. Parker regarding these statements, the government should not object to an instruction limiting their use against Mr. Mazzo. Indeed, the absurdity (and unfairness) of using Mr. Parker's statements against Mr. Mazzo is shown by Mr. Parker's email statement that "the Board of Directors of the company only became aware the day it was announced by Abbott" (Dkt. 486, Ex. B, at 2) – a statement (more than three and one half years after the acquisition) that Mr. Mazzo obviously knew was patently erroneous because he had been intimately involved in such discussions with his Board well before that time.

### 2.3 Introduction of Mr. Parker's SEC Testimony Would Violate the Confrontation Clause

The government claims that "Parker's SEC testimony has been redacted to remove any Confrontation Clause issues," citing the Supreme Court's decisions in Bruton v. United States, 391 U.S. 123, 126 (1968), and Richardson v. Marsh, 481 U.S. 200, 208 (1987). (Dkt. 512 at 18.) But the existence of "any Confrontation Clause issues" is a separate question from whether a codefendant's statement so

"expressly implicate[s] or powerfully incriminate[s]" a co-defendant that Bruton **severance** is required. (Id.) As Bruton and its progeny make clear, **severance** is not required every time a codefendant's extrajudicial statement is admitted precisely because "**limiting instructions**" ameliorate the Confrontation Clause issue. Gray v. Maryland, 523 U.S. 185, 192 (1998) (emphasis added); see also Richardson, 481 U.S. at 208; Bruton, 391 U.S. at 135. Indeed, in Richardson, the Court held that the Confrontation Clause was not violated by admission of a nontestifying codefendant's redacted statement only because there had been "a proper limiting instruction." 481 U.S. at 211. For this reason also, an appropriate limiting instruction should be given.

### 2.4 The Rule of Completeness Demands Additional Context

Mr. Mazzo and the government agree that the Rule of Completeness, in conjunction with Rules 403 and 611(a) and principles of Due Process, allows additional portions of a document (or conversation) to be entered into evidence "where the meaning of a statement is distorted by its edited presentation, creating a misleading impression." (Dkt. 512 at 13-14.) In this case, the redacted documents are misleading in the extreme. In the email, for example, the government **cuts off Mr. Parker's statement mid-sentence**. (See Sloan Decl., Exh. A, at 1 (with the government's selective and misleading excerpts highlighted)). Mr. Parker is describing why he bought AMO on Mr. DeCinces's recommendation – and his justification has **nothing to do with Mr. Mazzo**. Yet the passage is tailored to make it seem as if he made his purchase solely based on the fact that Mr. DeCinces "knew the CEO." (Id.) And in the government's redacted SEC transcript, the out-of-context statement "it doesn't look right" (Dkt. 486, Exh. A, SEC Tr. 143, 144) implies that Mr. Parker knowingly did something wrong and illegal when he traded. However, his consistent

position in the interview is just the opposite; he had no material, nonpublic information. (See Sloan Decl., Exh. B, SEC Tr. at 95-101.) He also stated that his memory is very poor due to his health issues, making it unlikely that he knowingly lied. (Id. at 15-18.)

In many situations, the best solution to the issue presented would be to make the entire document available to the jury, rather than cherry-picking selected statements. Mr. Mazzo recognizes, however, that, in this case, wholesale admission may not be practicable. At a minimum, then, Mr. Mazzo requests the admission of statements that are necessary to make the excerpts non-misleading: the second and third paragraphs in Mr. Parker's email to his Bishop, and pages 15-18 and 95-101 of the SEC transcript (attached as Exs. A & B).

## 3.0 Conclusion

For the foregoing reasons, Mr. Mazzo respectfully requests that the Court (i) offer a limiting instruction to prevent the use of Mr. Parker's statements against Mr. Mazzo, and (ii) employ the Rule of Completeness to provide the jury with fair context regarding Mr. Parker's statements, which have been misleadingly tailored by the government.

DATED: March 20, 2017

Respectfully submitted,
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Richard Marmaro
Clifford M. Sloan

By: /s/Richard Marmaro
Richard Marmaro

*Attorneys for James V. Mazzo*

9

REPLY TO GOVERNMENT'S RESPONSE TO OBJECTIONS OF DEFENDANT MAZZO TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE STATEMENTS OF DEFENDANT PARKER AT TRIAL
No. 8:12-CR-00269(B)-AG