FILED

2017 SEP -6 PM 3: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JAMES V. MAZZO,<br><br>　　　　Defendant. | SA CR No. 12-269(C)-AG<br><br>T̲H̲I̲R̲D̲<br>S̲U̲P̲E̲R̲S̲E̲D̲I̲N̲G̲<br>I̲N̲D̲I̲C̲T̲M̲E̲N̲T̲<br><br>[15 U.S.C. §§ 78j(b), 78ff;<br>17 C.F.R. § 240.10b-5: Securities Fraud (Insider Trading); 15 U.S.C. §§ 78n(e), 78ff; 17 C.F.R. § 240.14e-3(a): Tender Offer Fraud; 18 U.S.C. § 1623: False Sworn Declarations Before a Court; 18 U.S.C. § 2(b): Causing an Act to be Done] |

　　The Grand Jury charges:

COUNTS ONE THROUGH EIGHT

[15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2(b)]

A.　Acquisition of EYE by Abbott Laboratories

　　1.　At all times relevant to this Third Superseding Indictment, Advanced Medical Optics, Inc. ("EYE" or "AMO") was a medical device company based in Santa Ana, California. Shares of EYE common stock were registered with the Securities and Exchange Commission ("SEC") under Section 12(b) of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78l, and were publicly traded on the New York Stock Exchange ("NYSE"), a national securities exchange, under the symbol EYE.

2. In 2009, Abbott Laboratories ("Abbott") acquired EYE through a tender offer. The tender offer was publicly announced on January 12, 2009.

B. <u>Defendant MAZZO's Access To Inside Information Regarding Abbott's Acquisition of EYE</u>

3. Defendant JAMES V. MAZZO ("MAZZO") was the President, Chief Executive Officer ("CEO"), and Chairman of the Board of Directors of EYE. Through his position at EYE, defendant MAZZO learned of material, nonpublic information ("Inside Information") regarding Abbott's acquisition of EYE prior to any such information being released to the investing public or reported to the SEC. In particular:

   a. On or about October 22, 2008, defendant MAZZO obtained Inside Information at a dinner with Abbott's CEO in Costa Mesa, California.

   b. On or about October 26, 2008, defendant MAZZO obtained Inside Information at a meeting with Abbott personnel in Newport Beach, California.

   c. On or about November 14, 2008, defendant MAZZO obtained Inside Information at a meeting with Abbott's CEO in Costa Mesa, California.

   d. On or about November 26, 2008, defendant MAZZO obtained Inside Information when he was contacted by an Abbott representative who informed defendant MAZZO that Abbott would be submitting a preliminary tender offer proposal to acquire EYE in the next few days.

e. On or about December 1, 2008, defendant MAZZO obtained Inside Information when he received Abbott's non-binding preliminary proposal offering to buy EYE's outstanding shares of common stock through a tender offer for the cash price range of $21-$23 per share.

f. On or about December 15 and 16, 2008, defendant MAZZO obtained Inside Information when he attended meetings with EYE's legal and financial advisors in Newport Beach, California.

g. On or about December 16, 2008, defendant MAZZO obtained Inside Information when he met with an Abbott Senior Vice President in Costa Mesa, California, from approximately 6:00 p.m. to 9:00 p.m.

h. On or about December 21, 2008, defendant MAZZO obtained Inside Information when he received a call from an Abbott representative who confirmed that, after completion of Abbott's preliminary legal and financial due diligence review of EYE, Abbott's proposed purchase price for EYE common stock remained in the range of $21 to $23 per share.

i. On or about December 28, 2008, defendant MAZZO obtained Inside Information when he received a call from Abbott confirming that Abbott would be willing to propose a binding purchase price of $21 per share of EYE common stock.

j. On or about January 4, 2009, defendant MAZZO obtained Inside Information when he reached verbal agreement with Abbott for defendant MAZZO to remain at AMO after the acquisition by Abbott.

4. As an officer and director of EYE, defendant MAZZO owed a fiduciary duty of trust and confidence to EYE, and to the shareholders of EYE, not to use Inside Information for personal benefit. As an officer and director of EYE, defendant MAZZO was also

3

subject to EYE's policies regarding the use and safekeeping of confidential information, which also prohibited defendant MAZZO from using Inside Information for personal benefit. As an officer and director of EYE involved in negotiations with Abbott regarding its acquisition of EYE, defendant MAZZO executed confidentiality agreements that required him to: (a) maintain the confidentiality of Inside Information defendant MAZZO received; (b) not trade based on the Inside Information or use it for personal benefit; and (c) not disclose the Inside Information to any third parties.

C. <u>Defendant MAZZO'S Provision of Inside Information to Co-Schemer DeCinces</u>

5. Co-Schemer Douglas V. DeCinces ("DeCinces") was a close personal friend of defendant MAZZO. In particular, DeCinces and defendant MAZZO were neighbors, were members of the same golf club, and vacationed together. In addition, defendant MAZZO arranged for EYE to co-sponsor an annual charity golf tournament with DeCinces and invested in a business operated by DeCinces' son.

6. On some or all of the following dates, as well as others, defendant MAZZO and DeCinces had the following personal contacts, during some or all of which defendant MAZZO, in advance of the public announcement of Abbott's tender offer for EYE, in violation of his fiduciary duties of trust and confidence to EYE and EYE's shareholders, and for personal benefit, provided Inside Information regarding Abbott's acquisition of EYE to DeCinces:

    a. Between on or about December 12, 2008, and on or about December 14, 2008, defendant MAZZO and DeCinces had a conversation at defendant MAZZO's house. DeCinces asked defendant MAZZO how a refinancing deal defendant MAZZO was working on and had previously

disclosed to DeCinces was going. Defendant MAZZO told DeCinces that defendant MAZZO was also working on another deal and DeCinces had to keep the information to himself. Defendant MAZZO then told DeCinces that he was working on a deal to sell AMO to Abbott.

      b.    On or about January 4, 2009, after a dinner at the country club at which both were members in Newport Beach, California, defendant MAZZO approached DeCinces and asked DeCinces if DeCinces had enough AMO stock, to which DeCinces responded "yes, I am comfortable with my position." Defendant MAZZO then told DeCinces that DeCinces needed to purchase more AMO stock and that this was a "once in a lifetime" opportunity to purchase AMO stock.

D.    <u>DeCinces' Purchases Of Stock, and Tips to Others to Purchase Stock, Based on Inside Information Received From Defendant MAZZO</u>

    7.    On or about December 10, 2008, DeCinces liquidated his diverse stock portfolio at Merrill Lynch at a loss of approximately $80,000 in order to net approximately $160,000 that DeCinces then used to fund purchases of EYE common stock based on Inside Information provided by defendant MAZZO.

    8.    On or about December 15, 2008, December 17, 2008, December 18, 2008, January 2, 2009, and January 5, 2009, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside Information he had received from defendant MAZZO, DeCinces, through his Merrill Lynch broker, his PMB broker, a personal brokerage account at Credit Suisse, and four brokerage accounts set up for his grandchildren at Credit Suisse, purchased a total of 71,700 shares of EYE common stock.

    9.    On or about December 17, 2008, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside

5

Information he had received from defendant MAZZO, DeCinces encouraged T.D. to purchase EYE stock. As a result of the tip from DeCinces, T.D. purchased 10,000 shares of EYE stock.

10. On or about January 5, 2009, in a telephone call, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside Information he had received from defendant MAZZO, DeCinces encouraged his friend, D.P., to purchase EYE stock right away. As a result of the tip from DeCinces, D.P. purchased 25,000 shares of EYE stock.

11. On or about January 6, 2009, DeCinces had lunch at a Denny's restaurant with his friend E.M. At that time, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside Information he had received from defendant MAZZO, DeCinces encouraged E.M. to purchase EYE stock right away. As a result of the tip from DeCinces, E.M. purchased 17,000 shares of EYE stock.

12. On or about January 7, 2009, DeCinces called and sent an email message to his friend R.W., who resided in the Eastern Time Zone, after the close of the stock markets in the United States. In the email message, DeCinces wrote "Call me right now if you are in your office!" In a telephone call later that same day, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside Information he had received from defendant MAZZO, Decinces told R.W. to buy EYE stock and represented that it was urgent that R.W. do so right away. As a result of the tip from DeCinces, R.W. purchased 15,000 shares of EYE stock.

13. On or about January 8, 2009, during a breakfast meeting, in advance of the public announcement of Abbott's acquisition of EYE and based on the Inside Information he had received from defendant MAZZO,

DeCinces encouraged his friend S.J. to purchase EYE stock. As a result of the tip from DeCinces, S.J. used his hand-held mobile device to buy 8,500 shares of EYE common stock. S.J. later purchased another 2,500 shares of EYE stock.

14. On or about January 12, 2009, after the public announcement of Abbott's acquisition of EYE, which resulted in EYE's stock price increasing approximately 143 percent, DeCinces sold his shares of EYE common stock that were purchased based on the Inside Information he had received from defendant MAZZO, including shares DeCinces purchased in the brokerage accounts set up for his grandchildren at Credit Suisse, for a profit of more than approximately $1 million.

E. <u>Defendant MAZZO's Securities Fraud Violations</u>

15. On or about the dates set forth below, in Orange County, within the Central District of California and elsewhere, defendant MAZZO knowingly, unlawfully, and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon the purchasers and sellers of EYE common stock and the investing public; namely, defendant MAZZO, while in possession of material

7


information relating to EYE common stock, which information defendant MAZZO knew was nonpublic, provided the material nonpublic information to DeCinces in violation of a duty of trust and confidence owed by defendant MAZZO to EYE and EYE's shareholders, and made and caused to be made the following purchases of EYE common stock, without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, as specified in each count below:

| COUNT | DATE | SECURITIES TRANSACTION |
|---|---|---|
| ONE | 12/15/2008 | Purchase of 14,000 shares of EYE common stock by DeCinces |
| TWO | 12/17/2008 | Purchase of 8,000 shares of EYE common stock by DeCinces |
| THREE | 12/17/2008 | Purchase of 10,000 shares of EYE common stock by DeCinces |
| FOUR | 12/18/2008 | Purchase of 3,000 shares of EYE common stock by DeCinces |
| FIVE | 1/2/2009 | Purchase of 1,200 shares of EYE common stock by DeCinces |
| SIX | 1/2/2009 | Purchase of 12,500 shares of EYE common stock by DeCinces |
| SEVEN | 1/5/2009 | Purchase of 8,000 shares of EYE common stock by DeCinces |
| EIGHT | 1/5/2009 | Purchase of 15,000 shares of EYE common stock by DeCinces |

## COUNTS NINE THROUGH SIXTEEN

[15 U.S.C. §§ 78n(e) and 78ff; 17 C.F.R. § 240.14e-3(a); 18 U.S.C. § 2(b)]

16. The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 14 of this Third Superseding Indictment as though fully set forth herein.

17. On or about the dates set forth below, in Orange County, within the Central District of California and elsewhere, defendant MAZZO knowingly, unlawfully, and willfully engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer; namely, after Abbott had taken substantial steps to commence a tender offer for EYE common stock, defendant MAZZO, while in possession of material information relating to such tender offer, which information defendant MAZZO knew was nonpublic and had been acquired directly and indirectly from the offering person, and from an officer, director, and employee and other person acting on behalf of the offering person, provided to DeCinces the material information relating to such tender offer, and made and caused to be made the following purchases of EYE common stock without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, as specified in each count below:

| COUNT | DATE | SECURITIES TRANSACTION |
|---|---|---|
| NINE | 12/15/2008 | Purchase of 14,000 shares of EYE common stock by DeCinces |
| TEN | 12/17/2008 | Purchase of 8,000 shares of EYE common stock by DeCinces |
| ELEVEN | 12/17/2008 | Purchase of 10,000 shares of EYE common stock by DeCinces |
| TWELVE | 12/18/2008 | Purchase of 3,000 shares of EYE common stock by DeCinces |
| THIRTEEN | 1/2/2009 | Purchase of 1,200 shares of EYE common stock by DeCinces |
| FOURTEEN | 1/2/2009 | Purchase of 12,500 shares of EYE common stock by DeCinces |
| FIFTEEN | 1/5/2009 | Purchase of 8,000 shares of EYE common stock by DeCinces |
| SIXTEEN | 1/5/2009 | Purchase of 15,000 shares of EYE common stock by DeCinces |

```
                        COUNT SEVENTEEN

                         [18 U.S.C. § 1623]
```

18. The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 14 of this Third Superseding Indictment as though fully set forth herein.

19. Between on or about April 21, 2017, and on or about April 25, 2017, in Orange County, within the Central District of California, defendant MAZZO, while under oath and testifying in a proceeding before a United States District Court, knowingly made a false material declaration. Specifically, on or about the following dates, while under oath, defendant MAZZO gave the following testimony which, as defendant MAZZO then well knew, was false:

April 21, 2017

> Q. Okay. I want to ask you some questions about your friends and friendships and some of the core issues in this case. First of all, let me ask you this: Did you ever provide Doug DeCinces with material nonpublic information regarding AMO?
>
> A. Absolutely not.

April 25, 2017

> Q. The indictment charge says on or about November 24th, 2008, you attended a hockey game together. That part is true. Did you attend a hockey game together; is that right?
>
> A. Yes, I did.
>
> Q. Did you have any conversation at all regarding any material nonpublic information with Mr. DeCinces that night?

11

1     A.   No.
2  April 25, 2017
3     Q.   It says, on or about January 4th, 2009, at
4          approximately 7:20 p.m., defendant DeCinces and
5          defendant MAZZO had dinner together at the country
6          club at which both were members in Newport Beach,
7          California. Did you have dinner with Mr. DeCinces
8          that night?
9     A.   Yes.
10    . . .
11    Q.   And do you remember having dinner with the DeCinceses
12         that night?
13    A.   Yes.
14    Q.   Did you communicate any confidential material
15         nonpublic information to Mr. DeCinces that night?
16    A.   No, I did not.
17 April 25, 2017
18    Q.   And did there come a time on Sunday, January 11th
19         [2009], that the AMO board met to consider and vote on
20         Abbott's proposal?
21    A.   Yes, we met on Sunday with the board of directors.
22    . . .
23    Q.   So now I want to direct your attention to the period
24         of time about a month later, and specifically when the
25         NYSE sent a letter to AMO with a list of names of
26         people and companies and asked the AMO folks whether
27         or not they knew any of those. Do you have that
28         generally in mind?

1       A.   Yes.

2       Q.   Did there come a time when you saw Doug DeCinces' name
3            on a list of people who traded in AMO?

4       A.   Yes.

5       Q.   And was that the first time you learned that Mr.
6            DeCinces had traded in AMO during the fall and early
7            wintertime period?

8       A.   Yes.

9 In truth and in fact, as defendant MAZZO well knew at the time he
10 made the foregoing declarations, they were false because: defendant
11 MAZZO had disclosed material nonpublic information about AMO's
12 business to DeCinces; defendant MAZZO had disclosed material
13 nonpublic information about AMO's business to DeCinces on November
14 24, 2008 and January 4, 2009; and defendant MAZZO knew that DeCinces
15 had purchased EYE stock in late 2008 and early 2009 prior to
16 //
17 //
18 //

defendant MAZZO's review in February 2009 of a list from the New York Stock Exchange that referenced companies and persons, including DeCinces, who had purchased AMO stock before the January 12, 2009 announcement of Abbott's acquisition of AMO.

A TRUE BILL

/S/
---
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds
Section

JENNIFER L. WAIER
IVY A. WANG
Assistant United States Attorneys
Santa Ana Branch